IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NERY ESCOBAR SEGURA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 1:26-cv-304 (LMB/WEF) |
| ) | |
| PAMELA BONDI, et al., ) | |
| ) | |
| Respondents. ) | |

<u>MEMORANDUM OPINION</u>

Before the Court is petitioner Nery Escobar Segura's ("Escobar Segura") Motion for Temporary Restraining Order and Preliminary Injunction ("Motion"), in which he seeks enforcement of the Court's February 6, 2026 Order requiring the federal respondents to provide him with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a). Although Escobar Segura received a bond hearing on February 18, 2026 in response to the Court's February 6, 2026 Order, he contends that the Immigration Judge's decision to deny his request for release on bond violated due process. The federal respondents have filed an opposition. For the reasons stated below, Escobar Segura's Motion will be granted, and the federal respondents will be ordered to provide him with a new, constitutionally compliant § 1226(a) bond hearing before a new Immigration Judge.

I.

Section 1226(a) governs the detention of certain noncitizens "already present in the United States" pending the outcome of removal proceedings. <u>Jennings v. Rodriguez</u>, 583 U.S. 281, 303 (2018). Although § 1226(a) permits the Attorney General to detain noncitizens during removal proceedings, "the [Immigration and Nationality] Act and the regulations adopted to implement its authority afford aliens three opportunities to seek release from detention" either on

a monetary bond or on conditional parole.[1] Miranda v. Garland, 34 F.4th 338, 346 (4th Cir. 2022). The first opportunity is with an immigration officer, who is authorized to release the noncitizen on bond or conditional parole he "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). "If an immigration officer denies bond, sets bond at an amount the alien believes is too high or sets alternative conditions to bond the alien contends are unreasonable, an alien may appeal the officer's bond determination to an immigration judge, giving the alien a second opportunity at release." Miranda, 34 F.4th at 346 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19(a), 1236.1(d)(1)). The "third opportunity comes if an alien is not satisfied with the immigration judge's decision," at which time the noncitizen "may appeal to the Board of Immigration Appeals ["BIA"] for another review." Id. at 346–47 (citing 8 C.F.R. §§ 236.1(d)(3), 1003.19(f), 1236.1(d)(3)). "At each step in this process, the government requires the [noncitizen] to prove that he or she is not a danger to the community or a flight risk." Id. at 347 (citing 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8)).

In conducting a § 1226(a) bond hearing, an Immigration Judge "may look to a number of factors," including:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee

---

[1] As the Fourth Circuit has stated, the Court occasionally uses the term "alien" because Congress has used the term in the text of the applicable statutes and regulations. The Court's "use of the term 'alien' is not intended to express any opinion, pejorative or otherwise, about the [petitioner] in this action or others challenging their detention under our immigration laws." Miranda v. Garland, 34 F.4th 338, 345 n.1 (4th Cir. 2022).

prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006). "These factors provide a non-exhaustive, but flexible menu of considerations relevant to detention decisions." Miranda, 34 F.4th at 362. And of course, the procedures used by federal immigration officials to deny a noncitizen's request for release on bond always must comply with fundamental principles of due process. See id. at 359 (applying the Mathews v. Eldridge "balancing test to evaluate due process challenges to the procedures used by the government under § 1226(a)").

## II.

The following facts are derived from the pleadings, the exhibits, and the audio recording of the February 18, 2026 bond hearing, which the federal respondents have provided to the Court. Escobar Segura is a 37-year-old native and citizen of Guatemala. [Dkt. No. 8] at ¶ 1. He entered the United States in either 2007 or 2008 and has resided here since that time.[2] [Dkt. No. 1] at ¶ 25. Escobar Segura has lived in Virginia for more than ten years, and he is the father of three U.S. citizen children, all of whom are under the age of ten. Id. ¶ 27. He also has an 18-year-old child who is pursuing lawful status in the United States. Escobar Segura works in the construction industry and pays taxes, and his only contact with law enforcement consists of two minor traffic infractions in 2023 for holding a cell phone while operating a vehicle and for failing to obey a highway sign. Id. ¶ 29; [Dkt. No. 8-1] at 45–48. On January 24, 2026, while Escobar Segura was driving to work, he was arrested by Immigration and Customs Enforcement officers and transported to the Farmville Detention Center. [Dkt. No. 1] at ¶¶ 30–31.

---

[2] Both the Petition, [Dkt. No. 1] at ¶ 25, and the draft Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents, [Dkt. No. 8-1] at 30, reflect that Escobar Segura entered the United States in 2007; however, the Immigration Judge stated in his February 18, 2026 oral ruling that Escobar Segura entered the United States in 2008.

On February 1, 2026, Escobar Segura filed a Petition for Writ of Habeas Corpus ("Petition"), arguing that he was entitled to a § 1226(a) bond hearing. [Dkt. No. 1]. In response, the federal respondents filed a pleading indicating that Escobar Segura's Petition did "not differ in any material fashion" from the factual and legal issues presented in Ceba Cinta v. Noem, et al., 1:25-cv-1818-LMB-WEF (E.D. Va.), in which the Court determined that an individual who had been present in the United States for several years was not detained under 8 U.S.C. § 1225(b)(2) but rather detained under § 1226(a), thus entitling him to a bond hearing. [Dkt. No. 4]. On February 6, 2026, the Court entered an Order finding that Escobar Segura's detention was governed by § 1226(a) and directing the federal respondents to provide him with a standard bond hearing. [Dkt. No. 5]. The Court also ordered Escobar Segura's prompt release from custody pending that bond hearing. Id.

On February 18, 2026, Escobar Segura appeared with counsel via Webex for his scheduled bond hearing before Immigration Judge David Gardey in the Annandale Immigration Court. [Dkt. No. 8] at ¶ 5. Escobar Segura argued that he should be released on bond because he presents neither a flight risk nor a danger to the community, citing his minimal criminal history, verified Virginia address, U.S. citizen children, stable employment history, and pending Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents ("Application for Cancellation of Removal"). He provided the Immigration Judge with his children's birth certificates, information regarding one child's learning disabilities, a letter from his landlord confirming his address, a draft Application for Cancellation of Removal, letters of support from a potential sponsor and other friends and co-workers, and his tax returns from 2016–2023 and 2025. See [Dkt. No. 8-1]. The Department of Homeland Security ("DHS") attorney argued that Escobar Segura should be detained pending the removal proceedings because Escobar Segura provided inconsistent information regarding his fixed address. The

DHS attorney also raised that it was unclear whether Escobar Segura's U.S. citizen children live with him and why his partner did not submit a letter of support. Escobar Segura's counsel responded, and the Immigration Judge issued an oral ruling:

> Under the circumstances, I'm going to deny the request for bond. You have established that he is not a danger to the community; however, you have not established that there are conditions that could be set that would ensure his appearance and ensure his compliance (with his compliance) with the removal order and the other orders of the court. The respondent has lived unlawfully in the United States since 2008, has not sought to legalize his presence but has instead worked illegally in violation of the immigration and employment laws. He has paid – filed his taxes, and you've submitted 2016 through 2025. I don't find the fact that the 2024 is missing is significant, so that is a positive equity in his favor – that he appears to be at least accurately reporting his taxes. The court also takes into consideration that the respondent has prepared a draft 42B; however, the court is not persuaded that he has a significant likelihood to succeed given the limited nature of the proffer that was offered by the respondent's counsel concerning the exceptional, extreme, and unusual hardship, which does not appear to be exceptional and extremely unusual. The court understands that this evidence will be developed during the course of an individual hearing, but at least at this stage there does not appear to me that he has any likelihood of granting any kind of relief. The fact that he resided for such a significant period of time violating the immigration laws and the employment laws in the United States undermines a belief that he would comply with a removal order if one were entered in this case. As a result, the court is going to deny the request for continued release.[3]

[handwritten annotation: "sic or typo"]

Although the Immigration Judge required Escobar Segura to self-surrender to DHS by February 23, 2026 at 5:00 PM, this Court entered an Order on February 24, 2026 enjoining the federal respondents from re-detaining Escobar Segura "pending the Court's evaluation of the Immigration Judge's bond determination." [Dkt. No. 10] at 2. Additionally, it is unclear from the record before the Court whether Segura has appealed the Immigration Judge's detention decision to the BIA. Nonetheless, on February 24, 2026, Segura filed the pending Motion, which

---

[3] This quote is taken from the audio recording of the February 18, 2026 bond hearing. It is an unofficial transcript prepared by the Court. The Immigration Judge's statement regarding a "draft 42B" refers to Escobar Segura's draft Application for Cancellation of Removal.

seeks enforcement of this Court's February 6, 2026 Order and contends that the bond hearing he received did not comply with procedural due process requirements. [Dkt. No. 8].

III.

Before reaching the merits of Escobar Segura's Motion, the Court begins, as it must, with considering whether it has jurisdiction to determine whether the federal respondents provided Escobar Segura with a constitutionally compliant § 1226(a) bond hearing. The federal respondents contend that 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B)(ii) strip the Court of jurisdiction to review an Immigration Judge's decision to deny bond. The federal respondents also assert that Escobar Segura failed to exhaust his administrative remedies because he did not appeal the adverse bond decision to the BIA before seeking relief from this Court. For the reasons explained below, these arguments are rejected.

A. Section 1226(e)

The federal respondents first argue that 8 U.S.C. § 1226(e) precludes the Court from exercising jurisdiction over Escobar Segura's Motion. Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review," and that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." According to the federal respondents, because Escobar Segura's Motion challenges the Immigration Judge's discretionary bond decision, § 1226(e) strips the Court of jurisdiction. [Dkt. No. 13] at 2–5.

It is undisputed that "§ 1226(e) precludes an alien from challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release." Jennings, 583 U.S. at 295 (cleaned up). In this sense, Judge Ellis's opinion in Hatami v. Chertoff, 467 F. Supp. 2d 637 (E.D. Va. 2006), which is cited heavily by

the federal respondents, is instructive. Hatami involved a noncitizen from Afghanistan who had been convicted in Virginia of domestic assault and battery. Id. at 638–39. After the BIA denied Hatami's request for cancellation of removal, Hatami submitted three consecutive bond applications which were denied because "DHS ha[d] made a prima facie showing of dangerousness" based on "a facially legitimate concern with [Hatami's] behavior." Id. at 639. Hatami challenged the Immigration Judge's bond decision in federal court, claiming that the Immigration Judge "failed to provide a 'meaningful' bond hearing . . . because he relied on the government's 'bare bones allegations' of dangerousness." Id. The district court dismissed his habeas action, finding that § 1226(e) precluded judicial review because Hatami "challenge[d] only the decision to deny bond under the statute." Id. at 641–42 (emphasis added). By using the qualifier "only," it is clear that Judge Ellis did not close off other grounds upon which a noncitizen could seek relief from an Immigration Judge's denial of bond.

Indeed, as recognized by both the Supreme Court and the Fourth Circuit, § 1226(e) does not preclude the Court's exercise of jurisdiction where a noncitizen raises a constitutional challenge to the bond hearing he received. In Jennings, the Supreme Court made clear that § 1226(e) "does not preclude challenges to the statutory framework that permits the alien's detention without bail." 583 U.S. at 295 (cleaned up). There, several noncitizens mounted Fifth Amendment challenges to 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), contending that they were entitled to periodic bond hearings during the course of their detention. Id. at 286, 312. The Court held that because the noncitizens "contest[ed] the constitutionality of the entire statutory scheme," and because "the extent of the Government's detention authority is not a matter of 'discretionary judgment,'" it was able to "consider the merits of their claims." Id. at 296.

Following Jennings, the Fourth Circuit held in Miranda that § 1226(e) did not prohibit the exercise of jurisdiction where noncitizens challenged "the Attorney General's decision to adopt

procedures placing the burden of proof on aliens detained under § 1226(a)." 34 F.4th at 352. Specifically, the court stated that a "constitutional challenge" to the Attorney General's "categorical, across-the-board" procedures "is beyond the scope of § 1226(e)." Id. Taking Jennings and Miranda together, courts in this district have concluded that § 1226(e) does not bar judicial review where a noncitizen asserts that the factors an Immigration Judge employed in denying his request for release on bond failed to comport with due process.[4] See Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 3 (E.D. Va. Feb. 18, 2026).

Here, Escobar Segura does not seek review of the Immigration Judge's substantive decision denying his request for release on bond. Rather, his challenge is constitutional in nature because he claims that the Immigration Judge "disregard[ed] . . . the substantial evidence presented by the Petitioner and adjudicate[ed] the Petitioner's request for bond contrary to established BIA precedent," which is "a textbook violation of [Escobar Segura's] Due Process rights." [Dkt. No. 8] at ¶ 12. Specifically, Escobar Segura contends that the facts the Immigration Judge relied upon to deny him bond—including his unlawful status and his working without authorization—were so lacking in probative value that the consideration of those facts deprived him of a fair and individualized bond hearing. Id. ¶¶ 16, 18. Because "this is precisely the type of claim that belongs in federal court," Picado v. Hyde, 2026 WL 352691, at *4 (D.R.I.

---

[4] Courts in other jurisdictions have reached similar conclusions. See Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011) (holding that § 1226(e) "does not limit habeas jurisdiction over constitutional claims or questions of law"); Trejo v. Bullock, 2026 WL 598391, at *2 (E.D. Tenn. Mar. 3, 2026) ("[T]his Court's jurisdiction to review Petitioner's bond hearing is limited to whether it satisfied due process or otherwise suffered some defect that rendered it noncompliant with this Court's Order."); Picado v. Hyde, 2026 WL 352691, at *4 (D.R.I. Feb. 9, 2026) (finding that § 1226(e) does not strip the court of jurisdiction where a noncitizen "argues that the IJ failed to comport with due process requirements when she denied him release on bond"); Garcia v. Hyde, 2025 WL 3466312, at *7 (D.R.I. Dec. 3, 2025) ("[C]ourts can review the IJ's decision to ensure that it comported with procedural due process requirements.").

Feb. 9, 2026) (cleaned up), § 1226(e) does not strip the Court of jurisdiction to consider Escobar Segura's Motion.

B. Section 1252(a)(2)(B)(ii)

The federal respondents' second jurisdictional argument is based on 8 U.S.C. § 1252(a)(2)(B)(ii), which prohibits federal courts from reviewing any "decision or action" of "the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in [her] discretion." According to the federal respondents, because the decision of whether to release a noncitizen on bond or conditional parole pending the outcome of removal proceedings is committed to agency discretion, § 1252(a)(2)(B)(ii) forecloses jurisdiction. [Dkt. No. 13] at 6–8. This argument is unpersuasive for one simple reason: Escobar Segura's claim is limited to whether the Immigration Judge's decision comports with due process, and federal immigration officials do not have discretion as to whether to comply with the Fifth Amendment in denying a noncitizen's request for release on bond. Accordingly, § 1252(a)(2)(B)(ii) does not bar the exercise of jurisdiction. Accord Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 4 (E.D. Va. Feb. 18, 2026); see also Miranda, 34 F.4th at 353 n.6 (holding that § 1252(a)(2)(B)(ii) does not bar jurisdiction where the noncitizens "challenge[d] the extent of the government's authority under § 1226(a) rather than a discretionary decision").

C. Exhaustion

Finally, the federal respondents argue that Escobar Segura failed to exhaust his administrative remedies by not presenting his "disagreement" with the Immigration Judge's adverse bond decision to the BIA. [Dkt. No. 13] at 5. That argument also fails. In Miranda, the Fourth Circuit considered whether a noncitizen asserting a Fifth Amendment challenge to the procedures used during a § 1226(a) bond hearing must appeal to the BIA before seeking relief in

federal court. 34 F.4th at 351. The Fourth Circuit concluded that because "no statute applicable to [the claims at issue] provides that administrative exhaustion is jurisdictional," the "district court had discretion to decide if administrative exhaustion is required." Id.; see McCarthy v. Madigan, 503 U.S. 140, 144 (1992) ("[W]here Congress has not clearly required exhaustion, sound judicial discretion governs."). Here, the federal respondents have not advanced any compelling argument for the proposition that Escobar Segura should be required to appeal to the BIA before seeking relief in this Court, and the Court will not require Escobar Segura to "sit in an ICE detention facility" for months on end while he awaits a BIA decision. Picado, 2026 WL 352691, at *6. Accordingly, "the [C]ourt will exercise its discretion to excuse administrative exhaustion" in this habeas action. Dubon Miranda v. Barr, 463 F. Supp. 3d 632, 643 (D. Md. 2020), aff'd sub nom. Miranda, 34 F.4th 338; accord Diahn v. Lowe, 2026 WL 84576, at *5 (M.D. Pa. Jan. 12, 2026).

IV.

Turning to the merits of Escobar Segura's Motion, the Court finds that the facts the Immigration Judge relied upon in denying Escobar Segura's request for release on bond violated due process. In denying Escobar Segura's request, the Immigration Judge found that, although Escobar Segura established that he is not a danger to the community, he failed to establish that he does not pose a flight risk. In support of that determination, the Immigration Judge relied upon two facts, neither of which pass constitutional muster, and at least one of which also violates long-standing BIA jurisprudence.

First, the Immigration Judge pointed to Escobar Segura's unlawful status. He emphasized that Escobar Segura "has lived unlawfully in the United States since 2008" and "has not sought to legalize his presence" in this country. The Immigration Judge went on to say: "The fact that [Escobar Segura] resided for such a significant period of time violating the

immigration laws and the employment laws in the United States undermines a belief that he would comply with a removal order if one were entered in this case." The Immigration Judge also speculated as to Escobar Segura's likelihood of success on his Application for Cancellation of Removal, stating that there "does not appear to be" any circumstances that are "exceptional and extremely unusual." As an initial matter, it is inconsistent to claim that a noncitizen preparing to apply for cancellation of removal has not taken any steps to "legalize his presence" in the United States. Quite the opposite, if a noncitizen is granted cancellation of removal, he may obtain a permanent resident card.[5] And as Escobar Segura's counsel explained during the February 18, 2026 bond hearing, Escobar Segura did not have a viable path for seeking lawful status before entering removal proceedings.

Moreover, a noncitizen's unlawful status cannot provide a legitimate consideration upon which an Immigration Judge may deny a request for release on bond under § 1226(a) given that every individual who appears before an Immigration Judge for custody redetermination lacks lawful status. To consider this fact violates both § 1226(a)'s requirement of an individualized hearing and fundamental due process principles. As another jurist in this district aptly stated, "an individual's bond hearing fails to comport with due process where an Immigration Judge relies on considerations that would lead to an automatic denial of bond in all cases." Argueta-Portillo v. Bondi, et al., 1:26-cv-122-MSN-LRV, Dkt. No. 16 (E.D. Va. Mar. 2, 2026).

BIA precedents confirm this conclusion. In Matter of Patel, the BIA considered whether an Immigration Judge erred in releasing a noncitizen on a bond of $500 rather than releasing him

---

[5] See Fact Sheet, Naturalization for those Granted Cancellation of Removal or Suspension of Deportation, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/sites/default/files/document/fact-sheets/Fact-Sheet%E2%80%93Promoting-Citizenship-for-Cancellation-of-Removal.pdf (last visited Mar. 11, 2026).

on his own recognizance. 15 I. & N. Dec. 666, 666–67 (BIA 1976). In setting a bond of $500, the Immigration Judge relied upon the noncitizen having "overstayed his student visa" and the fact that "the visa petition of which he is the beneficiary was denied because he lacked a labor certification." Id. at 667. But the BIA found that "[t]hese factors bear little if any relevance to the issue of whether or not the [noncitizen] is likely to appear for his deportation proceeding." Id. According to the BIA, "[s]uch a broad interpretation of what constitutes an 'adverse factor' in this context could result in requiring a bond of almost every alien who is held in deportation proceedings." Id. Therefore, the BIA released the noncitizen on his own recognizance. Id. The BIA has continued to cite Matter of Patel for the proposition that "factors unique to each alien must be evaluated in determining suitability for release on custody." In re Helia de la Cruz-Palencia, 2011 WL 2261251, at *1 (BIA May 13, 2011) (unpublished).

Second, the Immigration Judge emphasized that Escobar Segura has been "working illegally" in the United States "in violation of the immigration and employment laws." This is problematic for two reasons. To begin, similar to the previous discussion concerning the consideration of a noncitizen's unlawful status, Escobar Segura's "unauthorized employment is inextricably related to the unlawful status that has caused his detention and request for a bond hearing in the first place." Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 6 (E.D. Va. Feb. 18, 2026). If an Immigration Judge could consider a noncitizen's unauthorized employment—which typically accompanies a noncitizen's unlawful status— "discretionary detention under § 1226(a) . . . would become a de facto mandatory § 1225 detention." Id. Moreover, no reasonable inference of flight risk can be drawn from a steady history of employment, authorized or not. Id. Rather, steady employment often reflects economic and residential stability and ties to the community in which the noncitizen is

employed.[6] In short, the link between Escobar Segura's unauthorized employment and any risk of flight is so tenuous that the Immigration Judge's reliance on that fact deprived Escobar Segura of constitutionally sufficient process. In sum, the facts relied upon by the Immigration Judge do not provide a constitutionally sufficient basis upon which to have denied Escobar Segura's request for release on bond based on the conclusion that he poses a risk of flight.

V.

For all the reasons stated above, Escobar Segura's Motion, [Dkt. No. 8], will be granted by an Order to be issued with this Memorandum Opinion, which will require the federal respondents to provide Escobar Segura with a new, constitutionally compliant bond hearing pursuant to § 1226(a) before a different Immigration Judge.

The Clerk is directed to forward a copy of this Memorandum Opinion to counsel of record.

Entered this 11 day of March, 2026.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

---

[6] In the criminal context, a steady employment history typically entitles a defendant to release pending trial. See, e.g., United States v. Adams, 794 F. Supp. 2d 989, 993 (S.D. Iowa 2011) (finding that "the Government has not shown by a preponderance of the evidence that Defendant will not appear as required if released pending trial" because "[f]or the two years leading up to her arrest she had maintained steady employment . . . and apparently will be able to return to this job if released pending trial").